IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        )
                                )
        v.                      )   Criminal No. 05-232
                                )
VERNON STEVEY                   )

O P I N I O N

DIAMOND, D.J.

On December 14, 2005, a grand jury returned a six-count superseding indictment against William Michalowski, Vernon Stevey and Eric Weaver. All three defendants were charged with the following: robbing the Irwin Bank and Trust in Greensburg, Pennsylvania on February 14, 2005, in violation of 18 U.S.C. §2113(a) (Count One); armed bank robbery of the Irwin Bank and Trust on February 14, 2005, in violation of 18 U.S.C. §2113(d) (Count Two); and using, carrying and brandishing a firearm during and in relation to a crime of violence on February 14, 2005, in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2 (Count Three). In addition, Michalowski and Stevey also were charged with the following: robbing the Parkvale Savings Bank in Wexford, Pennsylvania on February 16, 2005, in violation of 18 U.S.C. §2113(a) (Count Four); armed bank robbery of the Parkvale Savings Bank on February 16, 2005, in violation of 18 U.S.C. §2113(d) (Count Five); and using, carrying and brandishing a firearm during and in relation to a crime of violence on February 16, 2005, in

violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2 (Count Six).

Presently before the court is Stevey's Omnibus Pretrial Motion (Document No. 100), which includes a motion to suppress eyewitness identification and a motion to join in co-defendant William Michalowski's motion to produce evidence which the government intends to use under Fed.R.Evid. 404(b) and 609 (Document No. 94) and motion for severance of counts (Document No. 95). A hearing on this matter was held on June 20, 2006. For the reasons set forth herein, Stevey's motion to suppress eyewitness identification will be denied, and his motion to join will be granted.[1]

## Motion to Suppress Eyewitness Identification

At the hearing, the government presented testimony from Jeanne Smith, an eyewitness to suspicious activity in the parking lot of St. Alphonsus church in Wexford, Pennsylvania, and Detective Bert Lott of the Pine-Marshall-Bradford Woods police department. On February 16, 2005, Detective Lott responded to a call that the Parkvale Savings Bank on Route 19 in Wexford had been robbed, and the suspects had fled in a silver car. On that same date, Detective Lott also responded to a second call

---

[1] With respect to Stevey's motion to join in certain of co-defendant Michalowski's pretrial motions, as explained below, the 404(b) motion will be denied to the extent the requested material already has been supplied, and the motion to sever counts will be denied.

2

concerning suspicious activity in the St. Alphonsus church parking lot.

When Jeanne Smith left the church that day, she saw a small silver car pull into the church parking lot, which caught her attention because it pulled in rather fast. When she attempted to pull out of her parking space, a second bluish colored car with two occupants pulled in fast. Ms. Smith observed the vehicles head towards the school parking lot on the premises, and Ms. Smith followed them. Two men who were wearing hoodies, which were pulled up, exited the bluish colored car. Both men pulled the hoodies down and looked at Ms. Smith for several seconds. Ms. Smith had never seen the men before. The men got into the silver car and exited the parking lot, and the bluish colored car was left running in the lot.

Detective Lott met with Ms. Smith on February 16, 2005, and she described what she had observed in the church parking lot. At that time, she did not provide any information about the men she had seen. When Ms. Smith spoke with Detective Lott several weeks later, she volunteered to look at photographs of potential suspects. Detective Lott compiled two packets of photographs, which contained six photographs in each packet.[2] Detective Lott

---

[2] Detective Lott testified that he has constructed approximately 50 photo arrays. With regard to this case, he compiled the arrays based on information from available databases. Stevey's photograph was placed in one array, and Michalowski's photograph was placed in the other, along with other pictures of

showed the packets of photos to Ms. Smith on March 16, 2005. Besides Ms. Smith and Detective Lott, only Ms. Smith's husband was present when she reviewed the photographs in the kitchen of her home. Before she viewed the two packets of photographs, Detective Lott told her to review the photos, advised her to think about what occurred in the church parking lot, explained that the procedure was part of the investigation, and also explained that she was not required to select any photograph because the suspect may not even be included.

Ms. Smith spread out the photos from the first packet on her kitchen counter. Ms. Smith immediately eliminated three photos and then narrowed it down to two photos, one of which was co-defendant Michalowski, however she could not make a definitive selection. After Detective Lott put away the first packet, Ms. Smith reviewed the second packet of photos in the same manner. Ms. Smith identified photograph #2 as a person she saw in the St. Alphonsus parking lot on February 16, 2005. With respect to the second packet, Ms. Smith testified that only the photograph she identified, and none of the others, depicted one of the individuals she saw on the day in question. Ms. Smith testified that she was very confident in her selection. Detective Lott's testimony confirmed that there was no degree of hesitation in Ms. Smith's selection. The individual in photograph #2 was Stevey.

---

people who he believed looked like them.

Stevey argues that the eyewitness identification should be suppressed. Stevey claims that the array was unduly suggestive because his photograph was different enough from the others to draw the witness' eye. Stevey also claims the photo array process was not conducted properly because Detective Lott, who conducted the array, knew the suspect's identity. In addition, Stevey argues the identification was not reliable.

To support his claims, Stevey elicited the testimony of Dr. Roy Malpass of the University of Texas at El Paso. Stevey proffered Dr. Malpass as an expert witness in the field of eyewitness identification. The government agreed that Dr. Malpass qualified as an expert, and the court accepted his testimony as that of an expert witness.

Dr. Malpass testified that a publication by the Department of Justice entitled <u>Eyewitness Evidence: A Guide for Law Enforcement</u>, is a manual that includes recommendations for law enforcement personnel on how to construct and conduct photo arrays. Dr. Malpass discussed the recommended construction of a photo array, including the selection of filler photos that should be adequate alternatives to the suspect, as well as the administration of the photo array. Dr. Malpass' opinion was that the photo array which included Stevey's photograph contained an inadequate number of fillers, and therefore it was not an adequate array.

In <u>United States v. Holt</u>, 2005 WL 2807169 (W.D.Pa. Oct. 27,

AO 72
(Rev. 8/82)

2005), an expert witness in the field of cognitive memory and eyewitness identification testified at a suppression hearing and identified two sets of published guidelines on how to conduct photo arrays. One of the guidelines was <u>Eyewitness Evidence: A Guide for Law Enforcement</u>, which Dr. Malpass discussed here. The expert witness in <u>Holt</u> testified that there were several areas in which the photo array process in that case did not satisfy all of the recommendations in the two guidelines. The <u>Holt</u> court found that the guidelines discussed by the expert, "while valuable in helping to ensure increased accuracy in eyewitness identifications, do not reflect the constitutional parameters of a valid photo array and identification." <u>Holt</u>, 2005 WL 2807169 at *5.

> [T]here is no evidence that the guidelines established base line standards for a constitutionally permissible eyewitness identification procedure. Rather, the guidelines describe what appears to be the best practices for eyewitness identification. Thus, the guidelines and [the expert's] testimony do not establish that the eyewitness identification in issue was constitutionally defective. **The guidelines and [the expert's] testimony may affect the weight to be afforded to the identification, but do not establish that the identification violated defendant's right to due process.**

<u>Id</u>. (emphasis added).

This court likewise agrees that the publication discussed by Dr. Malpass at the suppression hearing simply provides guidelines or recommendations. It does not carry the force of law, and it does not inform this court's analysis of the constitutionality of

6

the eyewitness identification in this case. Furthermore, Dr. Malpass' testimony and opinion concerning the purported inadequacy of the array that contained Stevey's photograph, and whether a witness may be influenced to select a certain photograph, may go to the weight that a jury will afford the witness' identification, but it certainly does not establish that Stevey's due process rights were violated.

A due process violation can result when an identification procedure is so suggestive that it undermines the reliability of the resulting identification. Neil v. Biggers, 409 U.S. 188, 196 (1972). Showing a witness a photo array can constitute a denial of due process when police attempt to emphasize the photo of a given suspect, or when the circumstances surrounding the array unduly suggest who a witness should select. Simmons v. United States, 390 U.S. 377, 383 (1968). The defendant has the burden of proving that the identification procedure was impermissibly suggestive. United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003).

When evaluating an identification procedure to determine if it was constitutionally sound, a court must consider (1) whether the photo array procedure was unnecessarily suggestive and, (2) if so, whether the corrupting influence of the procedure was so suggestive that it outweighs the reliability of the identification. Burkett v. Fulcomer, 951 F.2d 1431, 1448 (3d Cir.

1991), citing, Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

With regard to the first consideration, factors that may be relevant in determining whether the photo array procedure was unnecessarily suggestive include: the size of the array, the manner of its presentation by law enforcement officers, and the details of the photographs themselves. United States v. Wiseman, 172 F.3d 1196, 1208-09 (10th Cir. 1999); United States v. Rosa, 11 F.3d 315, 330 (2d Cir. 1993). After considering these factors, the court concludes that Stevey has not sustained his burden of establishing that the identification procedure in this case was impermissibly suggestive.

First, while Stevey's motion does not challenge the size of the photo array, it is worthwhile to note that an array with as few as six pictures is not per se unconstitutional. United States v. Sanchez, 24 F.3d 1259, 1262 (10th Cir. 1994). Second, Stevey's claim that the array was presented in an improper manner lacks merit. On this point, Stevey contends the array was suggestive because Detective Lott, who conducted the array, knew that Stevey was the suspect. There is no authority for Stevey's contention that a photo array is unduly suggestive if the law enforcement officer who conducts it knows the suspect's identity. Stevey does not allege that Detective Lott made comments to Ms. Smith to suggest who she should identify as the suspect, and there is no evidence that Detective Lott emphasized a particular photograph.

8

The testimony of both Ms. Smith and Detective Lott confirm that the detective told her to review the photographs, advised her to think about what occurred in the church parking lot, explained that the procedure was part of the investigation, and also explained that she was not required to select any photograph because the suspect may not even be included. Thus, the mere fact that Detective Lott conducted the array does not make its presentation suggestive.

Third, Stevey believes that the details of the photographs indicate the array was suggestive because only he and one other man whose photographs appeared in the array had red hair, and the other red-headed man had a fuller face. However, it is not required that all photographs in the array be uniform with respect to a given characteristic. Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986). See also Tavarez v. LeFevre, 649 F. Supp. 526, 530 (S.D.N.Y. 1986) ("There is no requirement that a suspect in a lineup be surrounded by people identical in appearance.").

Here, Stevey's hair color does not appear as red as he characterizes it such that it stands out from the individuals in the other photographs. Three of the other men have light brown to dark brown or black hair, one has blond hair, and the other man has reddish-brown hair. Stevey's hair, which appears light brownish-red, actually looks predominantly brown much more so than red. Even if Stevey's hair color did stand out, that factor is

not sufficient, given the totality of the circumstances discussed below, to deny Stevey due process. See Lawrence, 349 F.3d at 116 (although the defendant's photo was the only one depicting an individual not wearing a shirt and wearing jewelry, and those factors may have made it stand out, they were not sufficient, given the totality of the circumstances, to deny the defendant due process because the circumstances established the reliability of the identification).

Stevey also claims that his photo was suggestive because it was the only one with a light blue background. The Third Circuit has held that the slightly darker background of one picture did not significantly contribute to the array's unnecessary suggestiveness. United States v. Mathis, 264 F.3d 321, 333 (3d Cir. 2001). Other courts have held that minor differences in photographic backgrounds and/or physical characteristics do not suffice to render a photo array impermissibly suggestive. See United States v. Bowles, 2005 WL 2271920 at *5 (D. Me. Sept. 15, 2005) (collecting cases). The Bowles court held that there was nothing suggestive about the background of the defendant's photograph. Id. at *4. Even though the defendant's photograph was the only one with a bluish-green background, two of the other photos in the array had colored backgrounds (a tannish-brown and a whitish-tan). Id. Likewise, here, although Stevey's photo has a light blue background, two of the other photos have colored

AO 72
(Rev. 8/82)

backgrounds which are greyish or greyish-blue.

Even assuming, arguendo, that the photo array in this case was suggestive, the identification still is reliable in light of the totality of the circumstances of the case. Biggers, 409 U.S. at 199. The Supreme Court has found that unnecessary suggestiveness, absent a substantial likelihood of misidentification, is not sufficient to warrant suppression. Id. In evaluating the risk of misidentification, a district court should consider and weigh the following factors: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4) the level of certainty demonstrated by the witness at the identification; and (5) the length of time between the crime and the identification procedure. Id. at 199-200.

In this case, Ms. Smith testified that she was able to see the individual who she later identified as Stevey when he pulled down his hoodie and looked at her after he exited the car in the church parking lot. The suspicious activity that took place in the church parking lot occurred in broad daylight on a clear day. From her testimony, it is apparent that Ms. Smith paid close attention to the situation that unfolded in the church parking lot. She followed the individuals' movements in the lot, and she studied their faces when they pulled their hoodies down and looked

at her. The court finds that Ms. Smith testified credibly at the hearing about what she observed in the church parking lot on February 16, 2005. Although Ms. Smith did not provide police with a description of the suspect, she told Detective Lott that she would be able to identify him if she saw him in a picture. Ms. Smith was able to positively identify Stevey when presented with the photo array, and that identification was made on March 16, 2005, only one month after she saw him in the church parking lot. Ms. Smith testified that she was confident in her selection of Stevey's photo from the array, Detective Lott's testimony confirmed that she did not hesitate in her selection, and the court accepts that testimony as credible.

Considering all the factors set forth in <u>Biggers</u>, the court concludes based upon the totality of the circumstances that the photo array and the procedures used in the eyewitness identification in this case "possessed sufficient aspects of reliability." <u>Brathwaite</u>, 432 U.S. at 106. Thus, even if the photo array had been suggestive, Stevey's due process rights were not violated.

<u>Motion to Join in Co-Defendant's Pretrial Motions</u>

Stevey also moved to join in co-defendant Michalowski's motion for production of Rule 404(b) and Rule 609 evidence and his motion for severance of counts. Stevey's request to join in those

AO 72
(Rev. 8/82)

motions will be granted. However, based on the government's response (Document No. 105), it appears that defendant has been provided with the requested Rule 404(b) material, thus the motion will be denied to the extent the requested material has been supplied.[3] However, to the extent any additional Rule 404(b) evidence becomes known to the government, the government must provide defendant with the notice required by Rule 404(b) ten days before trial. With respect to the motion for severance, that motion lacks merit and will be denied for the reasons explained below.

The motion for severance requests that the court sever for trial Counts One, Two and Three of the superseding indictment, which relate to the February 14, 2005 armed bank robbery, from Counts Four, Five and Six, which relate to the February 16, 2005 armed bank robbery, because they arise out of two distinct and independent transactions. It is argued that the two sets of counts are not sufficiently similar to justify their joinder under

---

[3] Michalowski sought an order compelling the government to provide him with a statement of the nature, dates and places of occurrences of any criminal offenses or acts of misconduct other than those set forth in the indictment which the government will attempt to prove at trial pursuant to Fed.R.Evid. 404(b) and/or evidence of any prior convictions pursuant to Rule 609. The government's response sets forth various categories of uncharged bad acts which it may offer in evidence at trial. In addition, Stevey's NCIC print-out is attached to the government's response. The government states that it may use the arrests and convictions listed on the NCIC print-out if they are relevant. The government notes that the investigation in this case is ongoing, and it may amend this notice before trial.

13

Fed.R.Crim.P. 8(a), or, alternatively, that severance is required under Fed.R.Crim.P. 14 because defendant would be prejudiced by the joinder of the two sets of counts.

Rule 8(a) provides that an indictment may charge a defendant in separate counts with two or more offenses if the offenses charged: (1) are of the same or similar character; or (2) are based on the same act or transaction; or (3) are connected with or constitute parts of a common scheme or plan. A defendant who claims improper joinder under Rule 8(a) must prove actual prejudice from the misjoinder. United States v. Gorecki, 813 F.2d 40, 42 (3d Cir. 1987).

In this case, Stevey cannot prove actual prejudice from the joinder of the two sets of armed bank robbery charges. Pursuant to Rule 8(a), the two sets of charges are of the same or similar character. Both involve armed bank robberies that occurred over a two day period in which the individuals involved executed the robberies in the same or similar fashion. In a case that involved multiple robbery counts, the Seventh Circuit found that "[b]ecause the three charges in the indictment are identical--robbery in violation of 18 U.S.C. §2113(a)--the joinder issue under Rule 8(a) comes to a screeching halt." United States v. Jamal, 87 F.3d 913, 914 (7th Cir. 1996).[4]

---

[4]Similarly, the First Circuit held that six bank robberies were properly joined in a single indictment. United States v. Chambers, 964 F.2d 1250 (1st Cir. 1992). The Chambers court

14

Federal Rule of Criminal Procedure 14, which deals with relief from prejudicial joinder, only comes into play after it first has been determined that joinder was permissible under Rule 8(a). United States v. Graci, 504 F.2d 411, 413 (3d Cir. 1974). According to Rule 14(a), if the joinder of offenses in an indictment appears to prejudice a defendant, the court may order separate trials of counts. A motion for severance under Rule 14 rests in the sound discretion of the district judge, whose determination should not be disturbed absent an abuse of discretion. United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981). One who claims improper joinder under Rule 14 must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial. Id. Mere allegations of prejudice are not enough, and it is insufficient to establish that severance would improve the defendant's chance of acquittal. Id.

Stevey has not, and cannot, demonstrate clear and substantial prejudice sufficient to justify severance under Rule 14. In cases where "evidence of each of the joined offenses would be admissible in a separate trial for the other", concerns about cumulation of

---

determined that the similarities among the six charged offenses were more than adequate to meet Rule 8(a)'s standard because each robbery involved a federally insured bank, the robberies occurred in a short period between May 1 and July 14, 1989 in the greater Boston area, and the six tellers who were robbed and who testified at trial each described a similar modus operandi during the robberies. Id. at 1250-51. In such a case that involves similar counts, institutional victims, mode of operation and time period, the First Circuit held that joinder is proper. Id. at 1251.

15

evidence and inference of a criminal disposition are "largely absent." United States v. Dileo, 859 F. Supp. 940, 944 (W.D. Pa. 1994). In this case, evidence pertaining to each set of counts likely would be admissible as to the other set under Fed.R.Evid. 404(b). Furthermore, as in Dileo, Stevey "is represented by experienced counsel, and the risk of confusion is virtually non-existent." Id. Finally, the danger that the jury might confuse the two sets of counts can be prevented with a proper instruction that the jury must give separate consideration to each separate charge. Zafiro v. United States, 506 U.S. 534, 539 (1993) (recognizing that limiting instructions often suffice to cure any risk of prejudice).

For all of these reasons, as well as those stated by the court on the record at the hearing, the court concludes that the two sets of armed bank robbery charges are properly joined under Rule 8(a), and Stevey has not advanced sufficient prejudice from their joinder under Rule 14 to justify severance of the counts.

An appropriate order will follow.

                                      Gustave Diamond
                                      United States District Judge

Date: July 20, 2006

AO 72
(Rev. 8/82)

cc: James H. Love
    Assistant U.S. Attorney

    William C. Kaczynski, Esq.
    1208 Manor Complex
    Pittsburgh, PA 15219

17

AO 72
(Rev. 8/82)